UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| C5 INVESTMENTS, INC., et al., )<br>)<br>  Plaintiffs, )<br>)<br>  -vs- )<br>)<br>ERNST & YOUNG LLP, )<br>)<br>  Defendant. ) | NO. 06-CIV-0210-WFN<br><br>MEMORANDUM ORDER AND OPINION GRANTING DEFENDANT'S MOTION TO DISMISS, *INTER ALIA* |

PENDING BEFORE THE COURT is Defendant's Motion to Dismiss (Ct. Rec. 12); Defendant's Request for Judicial Notice (Ct. Rec. 15); Plaintiffs' Evidentiary Objections and Motion to Strike (Ct. Rec. 20); and Defendant's Motion for Bifurcated Discovery (Ct. Rec. 23). A motion hearing was held on September 18, 2006. Erik Christiansen appeared on behalf of Plaintiffs; Kenneth Black and Timothy Conde appeared on behalf of Defendant.

**I. BACKGROUND**

Plaintiffs C5 Investments, Northwest Services, and Greg S. MacDonald are investors and/or investment companies. Mr. MacDonald is the president of Northwest Services and was also a high level executive at General Fire & Casualty and GF&C Holding Company (collectively "General Fire") at certain times relevant to this action.

Defendant Ernst & Young ("E&Y") is an international accounting firm which was retained by General Fire to audit and certify financial statements for the years ending December 31, 2001 through December 31, 2003.

In 2003, Plaintiffs invested in a private placement of stock in General Fire. In purchasing said stock, Plaintiffs relied on a Private Placement Memorandum dated

MEMORANDUM ORDER - 1

December 5, 2003 (the "PPM"). The PPM contained, among other things, information from General Fire's audited financial statements for years 2001 and 2002. An annual report containing General Fire's audited 2002 financial statement was also sent to Plaintiffs with the PPM. E&Y was aware that the PPM and annual report contained information from the audited financial statements.

In their audit and certification of the 2002 and 2003 financial statements, E&Y treated certain contracts as reinsurance contracts. In 2005, however, General Fire was audited by a different accounting firm and the contracts at issue were classified as deposits rather than reinsurance. This reclassification resulted in a downgrading of General Fire's stock from a BB+ to a BB- rating, with a negative outlook. General Fire was also required by the California Department of Insurance to suspend business in California. Plaintiffs allege that the negative rating and loss of business in California significantly devalued Plaintiffs' stock.

Plaintiffs commenced this action on December 2, 2005, claiming that Defendant failed to perform its accounting and auditing services with the degree of reasonable skill and care expected of auditors and accountants in similar circumstances. An Amended Complaint was filed on May 4, 2006 and served on Defendant on May 9, 2006. Defendant removed the action to federal court on May 26, 2006 based on diversity jurisdiction.

## II. DISMISSAL STANDARD

Defendant moves to dismiss the Amended Complaint on the basis that Plaintiffs fail to state a claim upon which relief can be granted. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The complaint will not be dismissed unless Plaintiff "can prove no set of facts in support of the claim which would entitle him to relief." *Id.* at 338.

MEMORANDUM ORDER - 2

### III. ANALYSIS

**A.   <u>Defendant's Request for Judicial Notice and Plaintiffs' Motion to Strike</u>**

Defendant requests that the Court take judicial notice of the public records attached as Exhibits A, C, D, and E to the Affidavit of Timothy Conde.  Plaintiffs do not object to Exhibits A-E, but move to strike Exhibits F, G, and H as outside the Amended Complaint.  Defendant responded to Plaintiffs' objection by withdrawing Exhibits E, F, and H in their reply memorandum.

The Court therefore grants in part Defendant's Request for Judicial Notice and denies as moot Plaintiffs' Motion to Strike.  The documents attached as Exhibits F, G, and H to the Affidavit of Timothy Conde were not considered by the Court in deciding the Motion to Dismiss.

**B.   <u>Defendant's Motion to Dismiss</u>**

The thrust of Defendant's argument is that Plaintiffs do not have standing to commence this action against E&Y.  In other words, Defendant does not owe a duty of reasonable care to Plaintiffs because there is no privity of contract or relationship so close as to approach that of privity between them.  Defendant's authority for this argument is *Credit Alliance v. Arthur Andersen & Co.*, 483 N.E.2d 110 (N.Y Ct. App. 1985).  The *Credit Alliance* rule has been adopted by the Supreme Court of Idaho in *Idaho Bank & Trust v. First Bancorp of Idaho*, 772 P.2d 720 (Idaho 1989).

In *Credit Alliance*, the Court of Appeals of New York framed the issue as follows: "[W]hether an accountant may be held liable, absent privity of contract, to a party who relies to his detriment upon a negligently prepared financial report and, if so, within what limit does that liability extend[?]"  *Credit Alliance*, 483 N.E.2d at 111.  The court's answer to this question resulted in a three-part test which narrows the class of plaintiffs who may sue an accountant when there is no privity of contract between the plaintiff and the defendant accounting firm.  The three prerequisites are: "(1) the

MEMORANDUM ORDER - 3

accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or parties' reliance." *Id.* at 118.

To illustrate this rule, the Court of Appeals discussed the two consolidated matters before it in the *Credit Alliance* case. In the first, the plaintiffs alleged that the defendant accounting firm "knew or should have known" that the audited financial statements were being shown to the plaintiffs in order to induce the plaintiffs to extend financing to the client, L.B. Smith, who actually retained the accounting firm (i.e., the party in contractual privity with the accountant). The Court of Appeals reasoned that this did not satisfy the test because there was no "allegation of either a particular purpose for the reports' preparation or the prerequisite conduct on the part of the accountants." *Credit Alliance,* at 119.

In the second matter, *European Am. Bank & Trust v. Strauhs & Kaye*, the facts alleged by the plaintiff "clearly show[ed] that [the accounting firm] was well aware that a primary, if not the exclusive, *end and aim* of auditing its client...was to provide [the plaintiff] with the financial information it required." *Id.* at 120. (emphasis in original). "Not only is it alleged...that the accountants knew of the identity of the specific nonprivy party who would be relying upon the audit reports, but additionally, the complaint and affidavit here allege both the accountants' awareness of a particular purpose for their services and certain conduct on their part creating an unmistakable relationship with the reliant plaintiff." *Id.* There were also direct communications between the accountants and the plaintiff where the plaintiff discussed the need for the accounting firm's evaluation and where the accountant made representations to the plaintiff regarding the value of their client's assets. *Id.* In other words, the relationship was "so close as to approach that of privity," that liability could be imposed

MEMORANDUM ORDER - 4

upon the accountant to the noncontractual party who relied on the negligently prepared financial report. *Id.* at 115.

In the case at bar, Defendant argues that Plaintiffs can allege no set of facts to meet the first prong of the *Credit Alliance* test, i.e., that the financial reports were prepared for the specific purpose of providing information to Plaintiffs. As a general matter, the New York courts have found that financial reports prepared for year-end accounting purposes or to fulfill other reporting requirements will not subject the accountant to liability to a nonprivy party. *See e.g., Security Pacific Business Credit v. Peat Marwick Main & Co.*, 597 N.E.2d 1080 (N.Y. Ct. App. 1992) (finding no claim that the defendant accounting firm was aware that a primary, if not the exclusive, end and aim of auditing its client was to provide the plaintiff with the financial information it required); *CMNY Capital v. Deloitte & Touche*, 821 F. Supp. 152 (S.D.N.Y. 1993) (noting that financial reports were prepared to comply with securities laws and not for the particular benefit of the plaintiffs). Indeed, to do so would open the accounting firm to endless liability to any creditor or investor who the client incidentally or collaterally exhibited the audit or financial statement to thereafter. Thus, "it is not enough to allege that an accountant was aware that its report could be made available to a client's lender upon request. Instead, the plaintiff must show that the accountant was well aware that a primary, if the exclusive, *end and aim* of auditing its client was to provide information to the plaintiff." *BHC Interim Funding v. Finantra Capital*, 283 F. Supp. 2d 968, 985 (S.D.N.Y. 2003) (citation and internal quotation marks omitted) (emphasis in original).

Here, the primary purpose of Defendant E&Y's engagement with General Fire was to prepare General Fire's year-end audited financial statements. Plaintiffs attempt to make their allegations fit into the *Credit Alliance* test by alleging that information from the E&Y audits was later included, with E&Y's permission, in the PPM and referenced annual report.

MEMORANDUM ORDER - 5

Plaintiffs ask the Court to find that this "subsequent primary purpose" meets the *Credit Alliance* test, citing *AUSA Life Insurance v. Dwyer* (*In re JWP Inc. Securities Litigation*), 928 F. Supp 1239 (S.D.N.Y. 1996); *AUSA Life Insurance v. Ernst & Young*, 206 F.3d 202 (2nd Cir. 2000); and *LaSalle National Bank v. Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071 (S.D.N.Y. 1996) for support.

In *Dwyer*, there were two separate financial reports prepared by the defendant accounting firm. The first was a certificate from the auditor stating that the auditor had not obtained any knowledge of any event of default ("no-default certificates"). These certificates stated *on the face of the document* that they were for the benefit of each particular plaintiff. *Dwyer*, at 1253-54. The second financial report prepared by the defendant accountant was an unqualified audit report. These reports were not prepared for the benefit of any particular plaintiff and the accountant was not retained for the particular purpose of inducing the plaintiffs to invest in its client's notes. *Id*. at 1254. The *Dwyer* court found that the no-default certificates satisfied the *Credit Alliance* standard, while the unqualified audit reports did not. *Id*. The fact that the defendant accounting firm understood that its unqualified audit reports could serve any number of the client's business purposes did not change the analysis. *Id*. Plaintiffs' citation to the Second Circuit's later decision in *AUSA v. Ernst & Young* (a related case) is also not helpful because the issue there was whether the plaintiffs could meet second prong of the *Credit Alliance* test as to the no-default certificates. 206 F.3d at 222-23.

*LaSalle National Bank* is also not helpful to Plaintiffs because in *LaSalle*, "Duff & Phelps had substantial influence in the drafting of the documents pursuant to which the Bond program was to be operated, and Duff & Phelps consented to the use of its name and the assigned rating in connection with the disclosure documents, advertisements, and description of the issue." 951 F. Supp. at 1093. (internal quotation marks omitted). The *LaSalle* complaint, unlike the Amended Complaint here, alleged that the "primary, if not exclusive,

MEMORANDUM ORDER - 6

*end and aim* of Duff & Phelps' rating process was to ensure an "AA" rating so that the Bonds could be sold to investors." *Id*. (emphasis added).

Defendant correctly points out that Plaintiffs' "subsequent primary purpose" concept appears nowhere in the cases following the *Credit Alliance* decision. Moreover, General Fire's subsequent use of the E&Y year-end audit is precisely the type of collateral and/or incidental use that the New York courts have said does not create a relationship so close as to approach that of privity between the accounting firm and the nonprivy party. It is also worth noting that the PPM itself was not prepared by E&Y -- it simply *contained* discrete parts of the audited financial statements.

Based on the foregoing, the Court finds that Plaintiffs can prove no set of facts to meet the first prong of the *Credit Alliance* test. *See Cahill v. Liberty Mutual Ins. Co.*, *supra*. The primary, if not the exclusive, *end and aim* of General Fire's engagement with E&Y was not to induce Plaintiffs to invest -- it was to audit and report on the consolidated and other statutory-based financial statements for the years ending December 31, 2001 through December 31, 2003. The later collateral use of the information from the audits in the PPM and referenced annual report is not enough to satisfy the first prong of the *Credit Alliance* test. The Court therefore grants Defendant E&Y's Motion to Dismiss.

**C.**     **Defendant's Motion to Bifurcate Discovery**

Because the Court grants the Motion to Dismiss it need not reach the Defendant's discovery motion. The Motion to Bifurcate Discovery will therefore be denied as moot. Accordingly,

**IT IS ORDERED THAT**:

1. Defendant's Motion to Dismiss, **Ct. Rec. 12**, is **GRANTED**.
2. The Amended Complaint is **DISMISSED** with prejudice.
3. Defendant's Request for Judicial Notice, **Ct. Rec. 15**, is **GRANTED in part**.
4. Plaintiffs' Motion to Strike, **Ct. Rec. 20**, is **DENIED as moot**.

MEMORANDUM ORDER - 7

5.   Defendant's Motion for Bifurcated Discovery. **Ct. Rec. 23**, is **DENIED as moot**. The Clerk of Court is directed to file this Order, provide copies to counsel, and thereafter shall CLOSE this file.

**DATED** this 21st day of September, 2006.

                                                s/ Wm. Fremming Nielsen
                                                 WM. FREMMING NIELSEN
09-21                                 SENIOR UNITED STATED DISTRICT JUDGE

MEMORANDUM ORDER - 8